ROBERT A. BURGOYNE
**FULBRIGHT & JAWORSKI L.L.P.**
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-4513
Facsimile: (202) 662-4643

JOSHUA D. LICHTMAN, (Bar No. 176143)
**FULBRIGHT & JAWORSKI L.L.P.**
865 South Figueroa Street, 29th Floor
Los Angeles, California 90017
Telephone: (213) 892-9200
Facsimile: (213) 680-4518

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL COUNCIL OF EXAMINERS FOR ENGINEERING AND SURVEYING,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SIAVASH HAKKAKIAN,<br><br>　　　　Defendants. | CASE NO. CIV-S-04-0838 MCE<br><br>**AMENDED STIPULATED FINAL JUDGMENT AND PERMANENT INJUNCTION** |

The Court has reviewed the plaintiff's Complaint and the subsequent submissions of the parties, including a Stipulation for Entry of Final Judgment and Permanent Injunction, to which the parties attached illustrative comparisons of certain of plaintiff's copyrighted materials and materials obtained from defendant's computer hard drive. Having reviewed those materials, as well as the stipulated facts and proposed legal conclusions set forth herein, the Court hereby enters this Final Judgment.

## I.
## JURISDICTION

1. This action arises in part under the Copyright Act, 17 U.S.C. § 101 et seq. This Court has original and exclusive jurisdiction over copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. This Court has original jurisdiction over plaintiff's state law claim under 28 U.S.C. § 1338(b) and supplemental jurisdiction under 28 U.S.C. § 1367(a).

## II.
## VENUE

3. Venue in this district is proper under 28 U.S.C. §§ 1391(b) and 1400(a). Defendant resides in and may be found within this district.

## III.
## STIPULATED FACTS

**A.   The Parties**

4. Plaintiff National Council of Examiners for Engineering and Land Surveying ("NCEES") is a nonprofit corporation with its principal place of business in Clemson, South Carolina. NCEES was founded in 1920 and serves state boards in all states and U.S. Territories, including California, which register and license professional engineers and land surveyors. A primary function of NCEES is to prepare standardized, confidential examinations that are used by the state boards to

help determine the competency of individuals seeking to become licensed to practice as professional engineers and land surveyors in their states.

5.      Defendant Siavash Hakkakian ("Mr. Hakkakian") is an individual who resides in Sacramento, California.

**B.    The Fundments Of Engineering Examination**

6.      Completion of the Fundamentals of Engineering ("FE") examination is a requirement for certification as an "engineer-in-training" ("EIT") in the State of California by the California Board for Professional Engineers and Land Surveyors (the "Board").  EIT certification is the first step required under California law towards becoming licensed as a professional engineer.

7.      Working with appropriate subject matter experts, NCEES prepares standardized examinations that test a candidate's knowledge, skills and competence, including the Fundamentals of Engineering ("FE") examination. NCEES develops and owns all rights in the FE examination.

8.      The FE examination tests subjects that are taught in a typical, accredited baccalaureate engineering curriculum, including chemistry, computers, mathematics, fluid mechanics, dynamics, ethics, electric circuits, mechanics of materials, and thermodynamics.

9.      Each FE examination question is developed at considerable effort and expense to NCEES, and has significant individual value.  Every FE examination is reviewed and revised many times before being finalized.  It costs NCEES in excess of $250,000 to develop each form of the FE examination, and approximately $2,600 to develop each FE exam question.

10.     The FE examination is an eight-hour examination, with one four-hour session in the morning and another in the afternoon.  There are 180 questions, and each question has multiple answer choices.  One answer is correct.  The other answers are typically referred to as "distracters."  As is common practice in the standardized testing industry, FE examinations include some new questions and

some previously used questions. The previously used questions serve as "equators" to measure the level of performance of candidates from one form of the examination to another. This ensures that test results on different forms of the examination can be meaningfully compared with one another. An additional reason for reusing questions is cost reduction.

11. Because questions and answers from a particular FE exam may be reused on future FE exams, it is critical that the examination forms be maintained in a secure manner, and not copied, disclosed or disseminated to the public unless NCEES determines to do so.

12. FE examinations are original compilations of NCEES and contain original test questions and answers created by or for NCEES. NCEES registers each examination for copyright protection pursuant to the Register of Copyrights' "secure test" regulations. *See* 37 C.F.R. § 202.20(c)(2)(vi) (2000). A "secure test" is defined as "a non-marketed test administered under supervision at specified centers on specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage following each administration." 37 C.F.R. § 202.20(b)(4). The secure test regulations suspend the requirement to deposit copies of the work, and require instead that registrants of secure tests need only deposit a portion or a description of the test sufficient to identify it. *See Id.* § 202.20(c)(2)(vi).

13. The registration numbers assigned by the Copyright Office to FE test forms registered by NCEES include the following: TX 5-479-877; TX 5-372-939; TX 5-327-737; TX 5-220-640; TX 5-014-796; TX 5-014-813. Each of these FE test forms, and each of the questions and answers contained on the forms, is an original work of authorship, the copyright in which is owned by NCEES.

14. NCEES has at all relevant times placed appropriate copyright notices on its FE examinations and their contents. NCEES also places statements prohibiting copying and reproduction on the front of all examination booklets. In

addition, NCEES informs prospective examinees, in writing, that they are prohibited from removing test questions or booklets from the examination area.

15.   To further protect the integrity of the examination process as well as NCEES' intellectual property rights, all individuals who take the NCEES examinations are asked to provide their signature below a statement on their answer sheet that, as currently worded, includes the following language:

> I further affirm that I will not copy any information onto material to be taken from the exam room.  Nor will I reveal in whole or in part any exam questions, answers, problems or solutions to anyone during or after the exam, whether orally, in writing, on any internet "chat rooms," or otherwise.

16.   Similar language, prohibiting the copying and/or disclosure of exam information during or after an exam, has been included on NCEES answer sheets for many years.

### C.   Mr. Hakkakian's Infringement And Attempted Subversion Of The FE Examination

17.   Under California law, it is a crime for any person to engage in any conduct that subverts or attempts to subvert a licensing examination or the administration of any such examination.  Prohibited conduct includes, but is not limited to:

> (a)   Conduct which violates the security of the examination materials; removing from the examination room any examination materials without authorization; the unauthorized reproduction by any means of any portion of the actual licensing examination; aiding by any means the unauthorized reproduction of any portion of the actual licensing examination; paying or using professional or paid examination-takers for the purpose of reconstructing any portion of the licensing examination; obtaining examination questions or other examination

material, except by specific authorization either before, during, or after an examination; or using or purporting to use any examination questions or materials which were improperly removed or taken from any examination for the purpose of instructing or preparing any applicant for examination; or selling, distributing, buying, receiving, or having unauthorized possession of any portion of a future, current, or previously administered licensing examination.

(b) Communicating with any other examinee during the administration of a licensing examination; copying answers from another examinee or permitting one's answers to be copied by another examinee; having in one's possession during the administration of the licensing examination any books, equipment, notes, written or printed materials, or data of any kind, other than the examination materials distributed, or otherwise authorized to be in one's possession during the examination; or impersonating any examinee or having an impersonator take the licensing examination on one's behalf.

Cal. Bus. & Prof. Code § 123.

18. Mr. Hakkakian registered and sat for the FE examination in April and October 1999, April and October 2000, April and October 2001, and April 2002.

19. In April 2002, the California Department of Consumer Affairs' Division of Investigation ("DOI") executed a search warrant, pursuant to which the DOI seized Mr. Hakkakian's computer hard drive. Located on Mr. Hakkakian's hard drive were 158 items that were identical, or at least substantially similar, to actual questions and answers from previous FE examinations, in particular the April and October 2000 and April 2001 examinations. The questions had not been publicly released by the NCEES, and there was no legitimate basis for Mr. Hakkakian to have removed the questions and answers from the test facility and stored them on his computer.

DOCUMENT PREPARED
ON RECYCLED PAPER

30793363.3

5

20. The Sacramento County District Attorney's Office thereafter filed criminal charges against Mr. Hakkakian. On September 17, 2003, Mr. Hakkakian pled no contest to attempting to subvert the FE examination, in violation of Cal. Bus. & Prof. Code § 123. Mr. Hakkakian was convicted and sentenced to 90 days in jail (suspended), 3 years' probation and 360 hours of community service.

21. Under the Copyright Act, 17 U.S.C. § 101, *et. seq.*, NCEES enjoys exclusive rights with respect to the FE test forms and the questions and answers therein, including the exclusive rights to copy, reproduce, distribute, display, or create derivative works based on the forms, questions and answers.

22. At no time was Mr. Hakkakian authorized to copy, reproduce, publish, distribute copies of, display or prepare derivative works based on all or any portion for those FE examination forms.

23. Mr. Hakkakian has infringed NCEES's copyrights in one or more FE examination forms, and its copyrights in the questions and answers contained therein.

24. Mr. Hakkakian acted in a manner and with sufficient knowledge to have his actions characterized as willful copyright infringement.

25. The actions discussed above adversely affect the public interest and have the potential for repetition.

26. Mr. Hakkakian's infringement of NCEES's copyrights has caused NCEES significant financial harm by compromising questions and answers from, at a minimum, the FE examinations administered in April and October 2000, and April 2001. *See ETS v. Katzman*, 793 F.2d 533, 543 (3rd Cir. 1986) (infringement of secure test questions "renders the materials worthless.")

## IV.

## CONCLUSIONS OF LAW

### A. NCEES'S Copyright Claim

27. To prove copyright infringement, it is sufficient to show (1) plaintiff's ownership of the copyright and (2) defendant's copying of protected material. *See*, *e.g.*, *Dr. Seuss Enter., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997); *ETS v. Simon*, 95 F. Supp. 2d 1081, 1087 (C.D. Cal. 1999).

28. Copying of protected material is established through proof of (1) access by the defendant to the copyrighted work and (2) substantial similarity between the plaintiff's and the defendant's works. *See*, *e.g.*, *Entertainment Research Group v. Genesis Creative Group*, 122 F.3d 1121, 1217 (9th Cir. 1997); *North Coast Indus. v. Jason Maxwell*, 972 F.2d 1031, 1033 (9th Cir. 1992); *Sid & Marty Croft Television v. McDonald's Corp.*, 562 F.2d. 1157, 1162 (9th Cir. 1977.)

29. The Copyright Act provides that ownership of copyright is automatic once an original work (such as the FE forms and questions at issue here) has been created. 17 U.S.C. § 102(a). The Act also provides that an entity such as NCEES automatically owns the copyright in any work created by its own employees within the scope of their employment and in any work created by non-NCEES employees for NCEES as "works-for-hire." 17 U.S.C. §§ 101, 201(b); *see also Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir.1994).

30. Because all of the questions at issue in this litigation were either created by NCEES employees or were created by outside writers as works-for-hire, NCEES owns the copyright in each of the questions and each corresponding set of answer choices, and in the test forms that contain those questions and answer choices. *See ETS v. Katzman*, 793 F.2d at 539; *ETS v. Miller*, 1991 Copr. L. Dec. 26,811 ("A copyright in a compilation of questions, such as the Foreign Service Exam, includes copyright protection for the questions themselves.").

DOCUMENT PREPARED
ON RECYCLED PAPER

30793363.3

7

31. The FE test forms and test questions (including the answer choices) are original, copyrightable materials, and NCEES has complied in all respects with the requirements of the Copyright Act, 17 U.S.C. § 101 *et seq.* It therefore enjoys certain exclusive rights with respect to the test forms and the questions contained therein, including the exclusive right to copy, distribute, display, publish, and prepare derivative works. *See e.g.*, *Association of American Medical Colleges v. The Princeton Review*, 332 F. Supp.2d 11, 20 (D.D.C. 2004).

32. NCEES's ownership of copyrights in the FE forms and questions is confirmed by registrations issued by the U.S. Copyright Office. These certificates "constitute prima facie evidence of the validity of the copyright" and of the facts stated in the certificates, including NCEES's ownership of copyright in the materials. 17 U.S.C. § 410(c); *see also Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217-18 (9th Cir. 1997), *cert. denied*, 523 U.S. 1021 (1998).

33. Sections 106(1) and 106(3) of the Copyright Act reserve to a copyright owner the exclusive right to copy and distribute his or her work.

34. Mr. Hakkakian obtained access to NCEES's copyrighted FE forms and questions by registering for the FE examinations administered in California in April and October 1999, April and October 2000, April and October 2001 and April 2002. On one or more of those occasions, Mr. Hakkakian illegally copied certain of the questions and answers from the examination, removed them from the testing facility and reproduced them on his home computer.

35. As shown by the comparisons provided by NCEES to the Court, the questions and answers recovered from Mr. Hakkakian's home computer are virtually identical, if not identical, to copyrighted FE questions and answers, reflecting that Mr. Hakkakian copied the creative heart of the NCEES questions. *Harper & Row, Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 564-65 (1985) (holding that copying of approximately 300 words from a 200,000 word manuscript

was copyright infringement); *see also ETS v. Katzman*, 793 F.2d at 542-43 (holding that copying of even a few test questions was sufficient to justify a preliminary injunction against copying of any test); *ETS v. Simon*, 95 F. Supp.2d at 1088.

36. Mr. Hakkakian has infringed NCEES's copyrights in FE questions and answers. Most if not all of the infringing materials in this case are apparently identical to the corresponding NCEES questions. However, the analysis is the same even with respect to questions that are not identical: immaterial changes to secure test questions or answers do not alter the conclusion that the materials are substantially similar to copyrighted material, and thus infringing. *ETS v. Katzman*, 793 F.3d at 541; *ETS v. Simon*, 95 F. Supp.2d at 1085-93.

37. As the Supreme Court has noted, while a selection must be original and creative to warrant protection, "the originality requirement is not particularly stringent.... [It] requires only that the author make the selection or arrangement independently (*i.e.*, without copying that selection or arrangement from another work), and that it display some minimal level of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358 (1991).

38. NCEES's selection of topics to be covered in a particular FE form (and of particular questions to test those topics) easily meets this standard. NCEES's selection of topics for a particular test form is an exercise that required judgment and creativity, and is therefore copyrightable. *See, e.g., Eckes v. Card Prices Update*, 736 F.2d 859, 863 (2d Cir.1984) (plaintiff exercised "selection, creativity, and judgment" in choosing 5,000 "premium" baseball cards out of total of 18,000).

39. Mr. Hakkakian's action in copying and reproducing questions and answers from various FE examinations constituted an infringement of NCEES's copyrighted test forms as a whole, and of the individual questions and answers.

40. The courts have uniformly found that secure test questions and test forms are subject to copyright protection. *See, e.g., ETS v. Katzman*, 793 F.2d at 538-40; *AAMC v. The Princeton Review,* 332 F. Supp.2d at 20 and n.6; *Graduate*

*Management Admission Council v. Raju,* 267 F. Supp.2d 505, 509 (E.D. Va. 2003); *ETS v. Simon*, 95 F. Supp.2d at 1087; *ETS v. Miller*, 1991 Copr. L. Dec. 26,811 (D.D.C. 1991); *Association of American Medical Colleges v. Mikaelian*, 571 F. Supp. 144, 150 (E.D. Pa. 1983), *aff'd*, 734 F.2d 3 (3d Cir. 1984).

41.   The injury resulting from the unauthorized distribution of secure test questions is obvious and substantial. *See ETS v. Katzman*, 793 F.2d at 543-44 (infringement of secure test questions would cause irreparable harm); *AAMC v. Mikaelian*, 571 F. Supp. at 155 ("The receipt of even a large sum of money from the defendants would not adequately compensate [plaintiff] . . . for the disruption" caused by exposing test questions intended to be used in the future).

42.   Among other relief, a copyright holder may obtain a permanent injunction for a defendant's violation of its exclusive rights under the Copyright Act. In this circuit, irreparable harm is presumed for the infringement of copyrights. *Micro Star v. Formgen, Inc.*, 154 F.3d 1107, 1109 (9th Cir. 1998). Injunctive relief is therefore proper and appropriate with respect to the unlawful use or distribution of copyrighted test questions, to protect the copyright holder's rights under the Copyright Act, and to maintain the integrity of the examination and the examination process as a whole. *ETS v. Katzman*, 793 F.2d at 545; *ETS v. Simon*, 95 F. Supp.2d at 1093; *AAMC v. Mikaelian*, 571 F. Supp. at 149.

43.   A copyright holder is also entitled to recover damages under the Copyright Act. *See* 17 U.S.C. § 504. In particular, "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer …; or (2) statutory damages." 17 U.S.C. § 504(a).

44.   If a copyright holder elects to recover its actual damages, it is entitled to recover "the actual damages suffered … as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Thus, in a case such as this, involving the infringement of secure standardized test questions,

the damages recoverable appropriately include the development costs for any infringed questions and infringed forms that are retired because of the compromise. They also appropriately include expenses that are incurred to identify the scope of the infringement and to address the effects of the infringement with respect to future administrations of the exam in question.

45. If a copyright holder elects to recover statutory damages, it may recover not less than $750 or more than $30,000 per infringed work unless the infringement is willful, in which event a sum of not more than $150,000 per infringed work may be awarded. 17 U.S.C. § 504(c).

46. A copyright holder such as NCEES may also recover its costs and attorneys' fees as an additional remedy for the infringement of its copyrighted works. 17 U.S.C. § 505.

47. The precise amount of damages caused by conduct such as Mr. Hakkakian's cannot readily be determined, nor can the harm caused to the integrity of the examination and licensure process.

48. In this case, the parties have separately resolved the question of the appropriate monetary payment to be made to the NCEES. In recognition of Mr. Hakkakian's financial situation, and of his representation to NCEES (and thus to this Court) that he did not distribute or disclose any of NCEES' secure test questions to any other individual or entity, and notwithstanding its belief that the infringements were willful, NCEES has agreed to accept statutory damages in the amount of $1,750 per infringed work. *See* 17 U.S.C. § 504(c). NCEES has also agreed to waive its right to recover attorneys' fees. Accordingly, Mr. Hakkakian shall pay NCEES $1,750 for each of the three known examinations that he infringed, for a total of five thousand two hundred and fifty dollars ($5,250). Pursuant to agreement of the parties, payments towards that amount shall be made by Mr. Hakkakian as follows: $450 shall be paid within five days of the entry

hereof, and Mr. Hakkakian shall make additional payments of $100 per month, for 48 months, with the first payment due thirty days after entry hereof.

49. The Court concludes that statutory damages are properly awarded in this case.

### B. NCEES's Unfair Business Practices Claim

50. Section 17200 of California's Business and Professions Code protects the public from "unfair competition," including business practices that are either "unlawful," "unfair," or "fraudulent." *See Podolsky v. First Healthcare Corp.*, 50 Cal.App. 4th 632, 647, 58 Cal.Rptr.2d 89, 98 (1996).

51. NCEES may enforce Section 17200 of California's Business and Professions Code through a private right of action for injunctive relief and restitution. *See* Cal. Bus. & Prof.Code §§ 17203-17204; *ETS v. Simon*, 95 F. Supp.2d at 1090.

52. Liability under Section 17200 of California's Business and Professions Code is strict, rendering a defendant's mental state irrelevant. *See State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal.App. 4th 1093, 1102, 53 Cal.Rptr.2d 229, 233 (1996).

53. Competitive injury is not an element of the unfair competition cause of action. *See, e.g., Barquis v. Merchants Collection Ass'n of Oakland, Inc.*, 7 Cal.3d 94, 109, 101 Cal. Rptr. 745, 756 (1972).

54. NCEES's claim under the Unfair Competition statute is not preempted by the Copyright Act because the Copyright Act preempts only those state laws that are "equivalent to" copyright. 17 U.S.C. § 301. If a state cause of action entails "extra elements" beyond the basic elements of copyright, and protects rights that are "qualitatively different" from those protected by copyright, it survives preemption. *See G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 903-904 (9th Cir.1992) (claim for improper use of airplane certification not preempted), *cert. denied*, 508 U.S. 959 (1993), *appeal after remand*, 132 F.3d

39 (9th Cir.1997); *Valente-Kritzer Video v. Pinckney*, 881 F.2d 772, 776 (9th Cir. 1989) (fraud claim not preempted) (citations omitted), *cert. denied*, 493 U.S. 1062 (1990); *AAMC v. The Princeton Review*, 332 F. Supp.2d at 22-23 (claim for misappropriation of trade secrets involving secure test questions not preempted by the Copyright Act).

55. The unlawful practices prohibited by Section 17200 include any business practice forbidden by law, whether the prohibition is criminal, civil, federal, state, municipal, statutory, regulatory or court made. *See, e.g., Olsen v. Breez, Inc.*, 48 Cal.App. 4th 608 (1996).

56. Mr. Hakkakian has violated Section 17200 by copying and reproducing questions and answers from a licensing examination, the FE examination, in violation of Cal. Bus. & Prof. Code § 123. *See ETS v. Simon*, 95 F. Supp.2d at 1091.

57. A plaintiff is entitled to an injunction under the California Unfair Competition statute if the remedy is necessary "to prevent the use or employment of the unfair practice." *Committee on Children's Television*, 35 Cal.3d at 211, 673 P.2d at 668-69, 197 Cal. Rptr. at 791-92 (citation omitted); *see also Freeman v. Time, Inc.*, 68 F.3d 285, 288 (9th Cir. 1995).

## V.

## **RELIEF**

Based upon the stipulated facts reflected herein, as well as the Court's comparison of the illustrative materials found on Mr. Hakkakian's computer hard drive and NCEES's copyrighted materials, the Court hereby ORDERS, ADJUDGES AND DECREES that:

1. Judgment is entered in favor of plaintiff National Council of Examiners for Engineering and Surveying ("NCEES").

2. Pursuant to Section 50 of the Copyright Act, Cal. Bus. & Prof. Code § 17203, and Fed.R.Civ.P. 65, defendant Siavash Hakkakian, in his individual capacity and through any entity that he owns or controls, is ENJOINED from:

(a) registering for or taking any future administration of the FE examination or any other examination that is developed and/or owned by the NCEES; and

(b) infringing in any manner NCEES's existing or future copyrights and specifically from copying, duplicating, distributing, selling, publishing, reproducing, adapting, publicly performing, displaying, preparing derivative works based on, renting, leasing, offering, or communicating in any manner, orally or in written, printed, audio, photographic, electronic, or other form, FE test questions, any question that is identical or substantially similar to any test form or test question copyrighted by NCEES, without advance written permission of, or written license from NCEES; and

(c) using or providing other prospective test-takers with information about questions or answers that have appeared on FE test forms and which have not been voluntarily disclosed by NCEES for general distribution to the public;

(d) otherwise engaging in any conduct that violates NCEES copyrights in FE examinations, questions, or answers or that otherwise unlawfully

subverts or attempts to subvert any secure NCEES examination or the administration of any NCEES examination.

   (e) otherwise violating the security of any FE examination materials; or

   (f) otherwise violating Cal. Bus. & Prof. Code § 123.

 3. Within twenty (20) days of the entry hereof, Mr. Hakkakian shall deliver to NCEES's counsel all copies of any FE test questions remaining in his possession, custody or control, other than those lawfully purchased from NCEES or other non-NCEES-copyrighted materials lawfully purchased or obtained.

 4. Mr. Hakkakian shall pay to NCEES five thousand two hundred and fifty dollars ($5,250), payable as follows:

   (a) within five (5) days of the entry hereof, Mr. Hakkakian shall pay NCEES the sum of four hundred and fifty dollars ($450); and

   (b) commencing thirty (30) days from the entry hereof, Mr. Hakkakian shall pay NCEES the sum of one hundred dollars ($100) for each of the following forty eight (48) months, until the total sum of $5,250 has been paid to NCEES.

 5. In light of the parties' stipulation, each party shall bear its own costs and its own attorneys' fees.

 IT IS SO ORDERED, ADJUDGED AND DECREED

DATE: April 20, 2005

          _____
          MORRISON C. ENGLAND, JR
          UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28